THE STATE ex rel. GEORGE N. WARDE, MATHEW KIELY, THADDEUS STEPHENS, WILLIAM RIPPLE, GRAND AVENUE BANK, and NORTHWESTERN BANK OF ST. LOUIS v. EUGENE McQUILLIN, Judge of Circuit Court, and CHARLES ALBRECHT and J. WALTER STAGE, Members and Trustees of St. Louis Lodge No. 3, Loyal Order of Moose, and ST. LOUIS LODGE NO. 3, LOYAL ORDER OF MOOSE.

### In Banc, December 1, 1914.

1. **PROHIBITION: Motion for Judgment.** A motion by relators in prohibition, for judgment on the pleadings, filed after the coming in of the return, is a challenge, in legal effect, to the legal sufficiency of respondents' return.

2. ————: **When Writ Will Go.** A writ of prohibition will only go to keep an inferior court within the orbit of its jurisdiction. It is an extraordinary writ, and no recourse must be had to it except where ordinary remedies are unavailing.

3. ————: ————: **How Lack of Jurisdiction May Appear.** Lack of jurisdiction may exist with reference to subject-matter generally (example, the class to which the case belongs) or with reference to the parties to the suit, or to excess of jurisdiction in the concrete case.

4. ————: ————: **Discretion.** The mere power to grant a writ of prohibition is not of so much importance in determining whether or not it shall go as is the question of the discretion of the court which is asked to issue it. Such discretion is always to be reckoned with and steadily applied with judicial circumspection.

5. ————: ————: ————: **Crowded Docket.** In the congested state of its docket, the Supreme Court will wisely exercise a sound discretion in refusing to draw to itself jurisdiction in the first instance on prohibition to determine the merits of controversies lodged in circuit courts, except on a clear showing of a lack of jurisdiction as a matter of law as distinguished from matter of fact, and that ordinary remedies by appeal, error or *certiorari* are absent.

6. ———: ———: **Injunction.** The circuit court has juris-
diction of the subject-matter of issuing a temporary injunction
to restrain a forcible and continuous trespass upon the prop-
erty of a corporate lodge by the officers of the supreme organiza-
tion and others, and the confiscation of its lodge furniture and
money in bank, to be followed by a permanent one or by a
dissolution thereof, on the application of equitable principles
to the facts ascertained on final hearing, on answer or motion
to dissolve; and having jurisdiction of the parties, the presence
of those things is an insurmountable barrier to the issuance
of a writ of prohibition before there has been any demurrer
or answer, or motion to dissolve, unless, in some way, the court
is proceeding in excess of that jurisdiction.

7. ———: ———: ———: **Cause of Action.** The contention
that the bill for injunction did not state facts sufficient to
constitute a cause of action will not authorize prohibition, where
the bill is either demurrable and no demurrer has been filed,
or is subject to a motion to make more definite and certain
and no such motion has been filed; for, in such cases, the
Supreme Court is bound to assume that, if the trial court is
given an opportunity to rule on the demurrer or motion, it
will rule correctly, and it will not anticipate its ruling, or
permit prohibition to be used to permit correction, in advance
of its anticipated erroneous rulings.

8. ———: ———: ———: **Insufficient Pleadings.** On prohibi-
tion the determinative question is not the sufficiency of the
pleading in the trial court, where pleadings are amendable,
but it is one of jurisdiction of the parties and subject-matter,
or excess of jurisdiction; and if jurisdiction be present, and is
kept within its proper channels, prohibition cannot go.

## Prohibition.

WRIT DENIED.

*O. J. Mudd* for relators.

(1) The supreme lodge in taking possession of the
property of the subordinate lodge through its agents,
as it did, was within its rights, was proceeding regu-
larly as prescribed by the laws of the order, and the
law of the land will not intervene at this juncture to
arrest such possession and give the property back to

the subordinate lodge. State ex rel. v. Grand Lodge, 8 Mo. App. 154; Colman v. Supreme Lodge, 18 Mo. App. 189; Mulroy v. Knights of Honor, 28 Mo. App. 463; Crutcher v. Order of R. W. Cond., 151 Mo. App. 622. (2) Injunction is not the right remedy or a lawful procedure by which to test the right of possession of property, and even if the possession of the Supreme Lodge were wrong or unwarranted by the law of the land, the issuance of the writ in such a case is a usurpation and an invasion of constitutional right of trial by jury. R. S. 1909, secs. 2534, 2515, Constitution, Mo., art. 11, sec. 28; 1 High on Injunctions, secs. 360, 699, 715; 22 Cyc. 826, 828-9; Smith v. Jameson, 91 Mo. 13; Owen v. Ford, 49 Mo. 436; Gildersleeve v. Overstolz, 97 Mo. App. 303; Powell v. Canaday, 95 Mo. App. 713; State ex rel. v. Wood, 155 Mo. 445; Boeckler v. Railroad, 10 Mo. App. 448; Carlin v. Wolff, 154 Mo. 539; Davis v. Hartwig, 195 Mo. 380; Brier v. Bank, 225 Mo. 683. (3) Insolvency of a defendant will not convert an action at law into one in equity. 22 Cyc. 838-9. (4) The facts alleged in the petition do not warrant an injunction to restrain defendants from withdrawing funds from the Northwestern Bank. Real Estate Co. v. City, 169 Mo. 234; 22 Cyc. 924-5-6; McKinzie v. Mathews, 59 Mo. 99; Worthington v. Lee, 61 Md. 530; Mallincrodt v. Nemnich, 169 Mo. 388. (5) If on the pleadings the law did not warrant a writ of injunction, the alternative writ of prohibition should be made absolute. State ex rel. v. Sale, 188 Mo. 493; State ex rel. v. Wood, 155 Mo. 425.

*Milton B. Rosenheim* and *Jesse L. England* for respondents.

(1) The action of the supreme lodge, through relators herein, in declaring a forfeiture of all the property, real and personal, of the respondents, without preferring charges against the local lodge and its

members or in any manner giving the local lodge and its members an opportunity to be heard in defense of their property rights, deprived the said local lodge and its members of their property rights without due process of law, and was in plain violation of the Constitution of the State and of the United States. Such action is the embodiment of a legal wrong and will warrant injunctive relief. Austin v. Searing, 16 N. Y. 112; Wicks v. Monihan, 130 N. Y. 237; Turner v. Stewart, 78 Mo. 481; R. S. 1909, sec. 2534; Const. Mo., art. 2, sec. 30; Bauer v. Samson Lodge, 102 Ind. 269. (2) The petition and return set out in relators' application fully show that property rights are involved and that one of the issues made is the right to possession to certain real and personal property, said property being claimed by two factions of a fraternal beneficiary association. Injunction has always been held to be the proper remedy in such cases. High on Injunctions, sec. 305; Fullbright v. Higginbotham, 133 Mo. 676; Prickett v. Wells, 117 Mo. 502; Boyle v. Roberts, 222 Mo. 613; Bacon's Benefit Societies and Life Ins., sec. 68. (3) A court of equity has jurisdiction to prevent repeated and continuous trespass, and this, regardless of whether the trespasser is solvent or insolvent. The petition in this case expressly alleges that the defendants are trespassers on the real property of the plaintiff corporation, and that such trespass is continuous and repeated. Turner v. Stewart, 78 Mo. 481; Sills v. Goodyear, 80 Mo. App. 132; Beach on Injunctions, sec. 1135; State ex rel. v. Gravel Road Co., 116 Mo. App. 175; Hobart Lee Tie Co. v. Stone, 135 Mo. App. 456. (4) If the court *nisi* had jurisdiction of the class of cases to which the proceedings sought to be prohibited belongs, and acquires jurisdiction of the subject-matter, the mere matter of defects in the petition or complaint by which the proceeding was inaugurated, will not authorize the issuance of a writ of prohibition. Hence the question of whether the petition states a cause of

action, as relators contend that it does not, is not a matter to be inquired into by writ of prohibition, but rather by appeal, writ of error or *certiorari*. State ex rel. v. Stobie, 194 Mo. 52; State ex rel. v. Railroad, 100 Mo. 61; Schubach v. Donald, 179 Mo. 182; High on Extraordinary Rem. (3 Ed.), sec. 767a; State ex rel. v. Lucas, 236 Mo. 18.

LAMM, C. J.—Original proceeding by prohibition.

Defendants in an injunction suit pending in a division (to-wit, respondent McQuillin's of the St. Louis Circuit Court, as relators, apply here by petition on August 14, 1914, for a writ prohibiting that court from proceeding further, and made the plaintiffs in said injunction suit parties respondent with Judge McQuillin. Presently, on that application, a preliminary rule issues in vacation to show cause. Presently, respondents make return showing such cause as they had why our preliminary rule should not be made permanent. Thereupon relators file a motion for judgment on the pleadings. Thereby they insist that the preliminary rule should, as a matter of law, ripen into a permanent writ on the admissions and facts shown by the pleadings. Thereupon (without any evidence on, or determination of, controverted facts) the case is submitted on briefs and oral argument.

Under such circumstances, the motion for judgment on the pleadings is a challenge, in legal effect, to the legal sufficiency of respondents' return. Hence it is from admissions and allegations of that return, we must get the facts, if at all. [State ex rel. v. Shields, Judge, 237 Mo. 333-4.] Attending thereto, the case is this:

In July, 1914, respondents Albrecht and Stage, as members and trustees of St. Louis Lodge No. 3, Loyal Order of Moose, joining with them a domestic corporation, designated as "St. Louis Lodge No. 3, Loyal Order of Moose," as plaintiffs, brought suit in the St.

Louis Circuit Court against relators in the instant case, to-wit, Warde, Kiely, Stephens, Ripple and the two named banks, the life of the bill being injunctive relief. Verified by affidavit, the substance and theory of the bill were that St. Louis Lodge No. 3, Loyal Order of Moose, hereinafter called "local lodge," is organized under the laws of this State as a domestic corporation having a fraternal, beneficiary character; that as such domestic corporation it owns valuable real estate in the city of St. Louis, improved by a clubhouse and outbuildings, said clubhouse containing billiard, pool, library and lounging rooms, bowling alleys, "and other social features" to be "enjoyed" by the members of said corporation, which latter has a paid up membership of over 2100 souls in good standing, and certain named officers, among them three trustees (to-wit, Albrecht, Stage and Teasdale, the latter refusing to join as plaintiff); that while the title to the real estate is vested in the local lodge, the care, control and custody of the personal property are in the named trustees, who have "sole jurisdiction" to invest the lodge moneys, handle trust funds, pay bills and control the lodge property, the majority of said trustees having power to act. This local lodge had $2700 deposited in the two banks, joined below as defendants and here as relators. The "furnishings" in the club house were of the value of $7500. We infer that the foregoing bank deposits are covered by the term "surplus money of the lodge" including "sick benefits" and "funeral expense funds," and it was the duty of the said trustees as need called to invest said funds. Having further alleged that the money and personal property aforesaid are the property of the members of the local lodge, the bill goes on to aver that the said domestic corporation, the local lodge, had also received a "charter" from the "Supreme Lodge of the World, Loyal Order of Moose," a voluntary association of persons, authorizing it (said

local lodge) to conduct such lodge in accordance with a ritual and form of government adopted by the supreme lodge; that on the 22d day of July, 1914, said supreme lodge, acting through defendant Warde (relator here) summarily, and without just cause or excuse, revoked the charter it had granted the domestic corporation, and thereupon proceeded to confiscate and take possession of its property, declaring the same to be forfeited to the supreme lodge; that thereupon said Warde, himself a non-resident of the State of Missouri, joining with him Stephens, Kiely, Ripple, relators here, and other persons unknown, by trespass wrongfully gained control of the clubhouse and the property of the local lodge, and by continuing their trespass with force and arms without warrant of law are holding possession and are denying to the members of said local lodge access to said premises, and using armed force in that behalf; that said trespassers are insolvent; that two of them, Warde and Stephens, have wrongfully appropriated some of said funds in said banks and are about to appropriate and unless restrained will appropriate the rest of them, so as aforesaid the sole and absolute property of the members of the local lodge. The bill avers, furthermore, that by such trespassing and force members of the local lodge are and will be deprived of their rights of ingress and egress to the lodge property; that the act of confiscation by the supreme lodge through Warde was arbitrary and capricious and that the greater part of the members of the supreme lodge are not residents of the State; that there is no redress for such wrongful acts except through a court of equity.

The bill was filed, as said, (1) on behalf of the local lodge, (2) the controlling majority of the board of trustees, who sued not only as such but as members of the local lodge, and (3) on behalf of any other members who care to join and share the burdens and privileges arising therefrom. It prays for a temporary in-

junction enjoining defendants from trespassing upon the property and interfering with the entrance thereto of any of the members of the local lodge and from assuming control or taking jurisdiction of any of the moneys aforesaid, or of the personal property, and restraining said banks from paying over to defendants any such moneys.

Thereupon, on due assignment to his division, Judge McQuillin issued an order citing defendants to show cause why a temporary injunction should not issue. Thereupon defendants, other than the banks (who stood mute below) came in and attempted to show cause why no preliminary injunction should issue. They filed no demurrer or answer to the bill, but they filed a paper called a "return," and verified this by affidavit. This "return" did not challenge the sufficiency of the bill as a pleading, neither specially nor generally, because of not stating facts sufficient to constitute a cause of action, but in substance it averred (this by way or in the nature of a denial) that the supreme lodge was a corporation under the laws of Indiana with power to sue and to be impleaded as such. It then set forth, broadly, the purposes of the Indiana corporation as fraternal, benevolent, charitable and educational, to assist needy members and their families and their widows and orphans, to encourage patriotism and obedience to the laws of their country, tolerance in religion, etc., etc.; that the supreme lodge organized the named local lodge and granted it a charter in the terms provided by the constitution and laws of the supreme lodge for the government of local lodges. It then goes on to make certain admissions as to the ownership of the real property and the control of the personal property by the board of trustees of the local lodge, but avers that the local lodge was at all times subject to the jurisdiction and bound by the laws of the supreme lodge; admits Warde has taken possession and holds possession and is using "whatever

forces are necessary to repel invasions and to protect their said possession." It then sets forth certain sections of articles six, twenty-six, sixteen and ten of the laws and constitution of the supreme lodge, providing for the revocation and suspension of the charters of a local lodge whenever in "the opinion" of the supreme dictator (an officer of the supreme lodge) the "conditions warrant it," and showing that in case of such suspension or revocation the property of the local lodge is forfeited to the supreme lodge, and that said dictator or some member authorized by him is required to take possession of the property.

As further justification and excuse of the conduct of Warde and those he joined with himself in making and continuing the alleged trespasses, they by way of said "return" went on to aver that the "dictator," under his authority as such, revoked the charter of the local lodge "in due course" and on such revocation authorized Warde to take possession of the property of the local lodge, and he did take possession and now holds it, with all such properties, moneys, etc., as the properties of the supreme lodge, and was so in such possession before the bill was filed; that the local lodge has no existence because of such forfeiture and confiscation and none of its members have any right to the possession, custody or control of any of said property; that there is a "supreme forum" provided by the constitution and laws of the supreme lodge, to-wit, a "court" authorized to hear and determine disputes between the supreme and local lodges or between any lodge and its members; that this *supreme forum* on "appeal" has jurisdiction of the controversy we have outlined, but that plaintiffs have taken no such appeal, wherefore it is the duty of defendants to hold the property subject to the direction of the supreme forum and of the supreme lodge; that the supreme lodge is not insolvent and now by its agents offers to enter its ap-

pearance and accept service if plaintiffs elect to sue out summons against it.

Such in brief is the showing made below to Chancellor McQuillin, in chambers, we assume, and before the return term, before answer, or demurrer.

Presently he issued a temporary injunction, conditioned on the filing of a $10,000 bond, restraining defendants until further order of the court from trespassing on the property in question or interfering with the entrance of the members of the local lodge and from disposing of or assuming control over the moneys of the local lodge, or of the property belonging to the lodge, or withdrawing such moneys from the banks named. The injunction bond was presently filed, and the order granting a temporary injunction was served upon defendants prior to the filing of the petition in this court in the instant case for prohibition.

The return in the instant case shows not only the foregoing facts, but it goes on to challenge the validity of those provisions of the by-laws and constitution of supreme lodge under which relators here (defendants below) sought to justify the confiscation, forfeiture and forcible seizure by trespass and retention by continuing trespasses and force of arms of the property of the local lodge and the personal property of the 2100 members thereof, alleging that the confiscation was contrary to law and without due process of law; that the act of taking possession was an unlawful act, a trespass pure and simple, as was the forcible denial of access to the clubhouse and property by the members of the local lodge, for which grievances, it is alleged, there was no proper and adequate remedy at law, and which trespasses defendants below (relators here) threatened to repeat and continue; that respondent McQuillin had jurisdiction of the persons of defendants and of the class of cases to which this controversy belongs, to-wit, the subject-matter, and that a writ of prohibition ought not to issue against him, thereby al-

lowing prohibition to take the place and effect of appeal, error or *certiorari*; that equity has jurisdiction also to avoid a multiplicity of suits, and because of the insolvency of the trespassers, and because two factions of a fraternal beneficiary association are claiming the real and personal property; and that, therefore, respondent McQuillin did not exceed his power as judge in taking jurisdiction, etc.

It is on such a record we are called on to adjudge whether our permanent writ shall go prohibiting Judge McQuillin from entertaining further jurisdiction of the injunction suit. We have come to the conclusion our preliminary rule, improvidently made, stands to be quashed, and that a permanent writ must be denied; because:

(a) As a foreword it is not amiss to repeat some propositions often announced, but sometimes blinked, to-wit:

(1) in the first place, a writ of prohibition will only go to keep an inferior court within the orbit of its jurisdiction. It is an *extraordinary* writ and no recourse must be had to it except where *ordinary* remedies are unavailing—the maxim being that in law we have recourse to what is extraordinary when the ordinary fails. (*Recurrendum est ad,* etc.)

(2) In the second place, lack of jurisdiction may exist with reference to subject-matter generally (*e. g.,* the class to which the case belongs) or it may exist with reference to the parties to the suit, or it may exist with reference to excess of jurisdiction in the concrete case itself.

(3) In the third place, the mere power to grant a writ of prohibition (or other extraordinary writ, barring *quo warranto* at the instance of the Attorney-General) is not of so much importance in determining the question of writ or no writ as is the question of the discretion of this court when it is called upon to exercise the power. The right and settled doctrine is that

such discretion exists to be always reckoned with and steadily applied with wise circumspection.

(4)  In the fourth place, from that right doctrine, another flows as a corollary, to-wit, that in the congested state of our docket in appealed cases this court will wisely exercise a sound discretion in refusing to draw to itself jurisdiction *in the first instance* on prohibition to determine the merits of controversies lodged in circuit courts, except on a clear showing of lack of jurisdiction as a matter of law as distinguished from matter of fact, and that ordinary remedies by appeal, error or *certiorari* are absent.

If authority be needful or useful to sustain one or the other of those primary and basic propositions, such authority will be found in the pronouncements of one or the other of the following cases (some in one and some in the other):  State ex rel. v. Shelton, 238 Mo. l. c. 292 et seq.; State ex rel. v. Sale, 188 Mo. l. c. 496 et seq.; State ex rel. v. Stobie, 194 Mo. l. c. 52; State ex rel. v. Lucas, 236 Mo. l. c. 32; State ex rel. v. Shields, 237 Mo. l. c. 334 et seq.; State ex rel. v. Robinson, 257 Mo. 584  (*vide* closing remarks of opinion by Brown, J.) ; State ex rel. v. Kansas City Gas Co., 254 Mo. l. c. 531; State ex rel. v. Tracy, 237 Mo. 109.

It is in the light of the foregoing guiding propositions this case must be ruled, if it is to be disposed of *secundum regulam.*

(b)  We shall assume on the record here that it goes without even saying that the circuit court had jurisdiction of (1) the parties and (2) the subject-matter, to-wit, the issuing of a temporary injunction, to be followed by a permanent one or by its dissolution on the application of equity principles to the facts ascertained on final hearing, in term, on answer or on motion to dissolve, or on joint hearing on both.  Now, according to all good doctrine, the presence of jurisdiction in those prime essentials is an insurmountable barrier to the issuance of our writ of prohibition, unless,

peradventure, the circuit court was swelling its juris-
diction in the case beyond its prescribed channel, even
as a stream by excess of water bursts its banks now
and then.  [*Vide* cases, supra.]

(c)  With so much determined, we confront the
question of an excess of jurisdiction in the concrete
case.  Attend to that view of it.

It is argued by learned counsel for relators that
the bill for injunction did not state facts sufficient to
constitute a cause of action in divers particulars, hence
prohibition lies.  We will not cumber this opinion by
enumerating them, for they one and all may be grouped
together and held to amount to one, namely, either the
bill was demurrable, or was subject to a motion to make
more definite and certain what was obscurely alleged
or only inferentially charged.

As to that we say:  The sufficiency of the petition
was not challenged by demurrer below.  The court, so
far as we can see, made no ruling on its sufficiency.
How it might rule in due course is hidden in the womb
of the future, and is discoverable only by the event,
barring the occult vision of a seer, which latter we
utterly disavow as a judicial attribute.  It has been
held in some cases, on the facts present in those cases,
that if the sufficiency of the petition has been chal-
lenged in the circuit court and ruled adversely to de-
murrant so that it was settled once for all that the trial
court entertained an erroneous view in excess of its
jurisdiction and was going to put it in force, the rem-
edy by prohibition might be invoked.  But, on such
facts as we are now dealing with, there is a better doc-
trine applicable to this extraordinary remedy, one find-
ing abundant place in our decisions, to the effect that
the circuit court does not lose jurisdiction by mere
error in ruling on a demurrer or otherwise when such
error is correctible on appeal or writ of error.  We
need not pursue that line of thought because the record
we are dealing with is no such record.  In this case we

are, in effect, asked to anticipate the ruling of the judge on the sufficiency of the bill, or on the facts, correct imaginary errors in his future rulings, and take over jurisdiction to ourselves, not only on the sufficiency of the bill, but on the merits, as an intermediate step arresting the evolution of a case pending below. That we ought not to do this is, we think, well within the doctrine and reasoning of a line of cases. [State ex rel. v. McQuillin, 256 Mo. l. c. 702 et seq.; State ex rel. v. McQuillin, 260 Mo. l. c. 176.] Says BOND, J., speaking acceptably for us all in the latter case: "We must assume that the said court will conduct the proceedings before it according to correct principles of law and equity, and, if the hearing should disclose no matter for which relief could be given, it will be denied or *vice versa.*" To the same purpose are the *rationale* and judgments in State ex rel. v. Scarritt, 128 Mo. l. c. 338; Schubach v. McDonald, 179 Mo. l. c. 182; State ex rel. v. Southern Ry. Co., 100 Mo. l. c. 60 et seq.; State ex rel. v. Gill, Judge, 137 Mo. 681; State ex rel. v. Gates, 190 Mo. l. c. 553 et seq.; State ex rel. v. Stobie, 194 Mo. l. c. 52; State ex rel. v. McQuillin, 256 Mo. l. c. 702 et seq.

On prohibition the determinative question here is not one of mere pleading below, where pleadings are amendable (and often need amendment). It rises to the dignity of one of jurisdiction in the strictest sense. In that view of it, in the Schubach-McDonald case, supra, are pertinent observations, viz.:

"The matter, therefore, compresses itself into the question whether or not a basic subject-matter, over which a court of equity has jurisdiction, was presented to the circuit court for adjudication by the injunction suits. That is, whether a matter was presented which that court has power to deal with, and not whether such a matter was inartificially or defectively presented. In other words, the question is one of jurisdiction and not of pleading, for if the court had jurisdiction over the

subject-matter, it had the power to decide whether the pleadings are or were not properly drawn, and also to decide whether or not the plaintiff was entitled to the relief sought. If a court has the power to act, its jurisdiction is in nowise impaired by the consideration whether it acted in accordance with the law or erroneously. Given the jurisdiction, all else is a mere matter of error, to be corrected on appeal. Or, further illustrated, if the court has jurisdiction over the subject-matter, it has the power to decide whether the petition does or does not state a cause of action, and the mere failure of a petition to state a cause of action or the defective statement of a good cause of action, in no way affects the jurisdiction of the court.'' So, in State ex rel. v. Scarritt, supra:

''The writ cannot rightly be employed to compel a judicial officer, having full jurisdiction over the parties and a cause, to steer his official course by the judgment of some other judge, or to substitute the opinion of another court for his own in dealing with topics committed by the law to his decision. [In re N. Y., etc., Steamship Co. (1895), 155 U. S. 523.]''

The questions learnedly discussed by counsel *pro* and *con* not only on the merits but on the sufficiency of the bill were all for disposition below in the first instance, and not for disposition here by a side stroke on prohibition. We have purposely avoided discussing them, so that we may not put the trial chancellor in leading strings when on some interlocutory step or on final hearing when all the facts are in, he comes to decide this or that one of them.

The premises considered, the preliminary rule is quashed and the permanent writ denied. It is so ordered. All concur but *Woodson, J.,* who dissents.